766 A.2d 328

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gregory A. BAKER, Appellee.**

Supreme Court of Pennsylvania.

Argued May 1, 2000.

Decided Feb. 20, 2001.

Susan R. Emmons, Elizabeth C. Cannon, District Attorney's Office for Com.

Andy Goncharoff, Public Defender's Office for Gregory A. Baker.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION

CAPPY, Justice *

We granted allocatur in this matter to assess the validity of a judgment of sentence imposed for indirect criminal contempt, upon an asserted violation of a temporary protection order under the Protection From Abuse Act.[1] For the reasons that follow, we find that the trial court should not have imposed a sentence for indirect criminal contempt. Accordingly, we affirm the Superior Court's order vacating the judgment of sentence.

* This opinion was reassigned to this author.
1. Act of December 19, 1990, P.L. 1240, No. 206 (as amended, 23 Pa.C.S. §§ 6101–6118) ( hereinafter "the PFA").

In February of 1997, N.B., a former girlfriend of Appellee, Gregory A. Baker ("Baker"), acting *pro se*, filed a petition for protection pursuant to the PFA, using the standard form then employed in the Court of Common Pleas for York County, similar to that which is presently prescribed by Pennsylvania Rule of Civil Procedure 1905 (effective July 1, 1998). N.B. alleged that, on one occasion, Baker had physically assaulted her and, on another occasion, entered her apartment without permission and verbally threatened her life; through standardized language in the form petition, N.B. also affirmed that she was in immediate danger of further abuse, and that a court order was necessary to protect her.[2] The trial court entered a temporary protection order pursuant to section 6107(b) of the PFA. The order provided, in pertinent part, that "[Baker] shall refrain from abusing, harassing, threatening and stalking [N.B.] or placing her in fear of abuse in any place where she may be found"; indicated that any violation would constitute contempt of court; and scheduled a hearing concerning the availability of a permanent order. Like the petition, the temporary order was also inscribed upon a standardized form, with the pertinent language being substantively identical to the form of order currently provided in Rule 1905.

Two deputy sheriffs undertook the task of serving the order upon Baker at the York County Prison, where he was incarcerated for unrelated charges. Baker was brought to the prison admissions area, at which time the order was read and explained to him, and he acknowledged receipt in writing. Subsequently, while departing the admissions area, Baker said, "I'm going to kill this bitch." Overhearing this statement, the deputies lodged a criminal complaint against Baker in the nature of indirect criminal contempt, alleging a violation of the temporary protection order. The trial court scheduled

2. Although the PFA requires that, upon the filing of a petition containing such allegations, a trial court shall conduct an *ex parte* proceeding, *see* 23 Pa.C.S. § 6107(b), neither the record of this appeal nor the docket in the underlying PFA case reflects that any such proceeding occurred in the instant case. However, neither party raised any challenge to this procedural defect in their briefs to this court, nor at any time during the pendency of this case.

a hearing on the charge, and subsequently issued a bench warrant for Baker's arrest when he failed to present himself at the appointed time (apparently he had been released from his incarceration for the unrelated offense). Baker was then jailed for approximately two months pending hearing.

At the hearing, the parties stipulated to the above facts, and the trial court found Baker guilty and sentenced him to "time served to six-months," the latter representing the maximum penalty available under the PFA for the offense of indirect criminal contempt. See 23 Pa.C.S. § 6114(b). The trial court found that N.B. was the subject of Baker's statement, but noted that the record did not reflect that N.B. had ever been informed of the statement. However, the trial court did not believe that the statement needed to be communicated to N.B., since "threat" was defined as "an expression of an intention to inflict pain, injury or evil..." and the statement was clearly a threat which applied to N.B. Trial court order at 3, 4. Moreover, the court was persuaded by the fact that Baker knew of the court order, yet uttered a threat to kill N.B. in deliberate disregard of that order. Based upon these factors, the court concluded that Baker's conduct, uttering a threat in the presence of third parties, constituted indirect criminal contempt.

On appeal, Baker asserted that under the facts of this case, the evidence was insufficient to find him guilty of indirect criminal contempt. In an *en banc* opinion, split 5–4, a majority of the Superior Court agreed with Baker and vacated the trial court's judgment of sentence.[3] *Commonwealth v. Baker*, 722 A.2d 718 (Pa.Super.1998). Two dissenting opinions were filed. The Commonwealth filed a petition for allowance of appeal to this court. We granted the petition for allowance of appeal in order to review the decision of the Superior Court.[4]

3. A three-judge panel of the Superior Court initially reversed the trial court's order, and the Commonwealth subsequently sought and obtained reargument before the court *en banc*.

4. Although the term of Baker's sentence has expired, we will not treat the question presented as moot. In light of the relatively short length of the maximum sentence available for indirect criminal contempt of a PFA order (six months, 23 Pa.C.S. § 6114(b)), the issue would appear

■  The Commonwealth remarks that "threaten" is not defined in the PFA, 23 Pa.C.S. § 2701 *et seq.*, and argues that we should follow the common, every day usage of that word, which establishes that a threat does not need to be communicated to any particular person in order to be a threat.[5]  Thus, the threat in this case did not need to be communicated to the victim in order to constitute a violation of the PFA order. Moreover, such an interpretation of "threaten" serves the purpose of the PFA by empowering the courts to intervene and prevent abuse in the future.[6]

Baker responds that the definition of "threaten" should follow that in the Crimes Code as provided for by § 6102(b) of the PFA. The Crimes Code requires that threats be communicated to the victim in order to be considered a crime.  18 Pa.C.S. § 2706 (relating to terroristic threats);  18 Pa.C.S. § 2709 (relating to harassment and stalking).  More persuasively, Baker asserts that the order in this case was not

to be capable of repetition yet apt to avoid appellate review.  *See generally Commonwealth v. Shaw,* 560 Pa. 296, 744 A.2d 739, 742 (2000).  Additionally, given that the terms of the temporary protection order at issue mirror those prescribed in our rules, *see* Rule 1905, the question presented is one of significant public importance.  *See generally Wortex Mills v. Textile Workers Union,* 369 Pa. 359, 85 A.2d 851, 857 (1952).

5.  In support of its position, the Commonwealth points to the following definition of "threat":

1:  an indication of something impending and usu. undesirable or unpleasant:  as **a:**  an expression of an intention to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or undone **b:**  expression of an intention to inflict loss or harm on another by illegal means and esp. by means involving coercion or duress of the person threatened.

Appellant's Brief at 9 (*citing* Webster's 3rd International Dictionary of the English Language at 2382).

6.  Amicus, Women Against Abuse, has filed a brief in support of the Commonwealth's position.  Amicus argues that the distinction between the purpose of the Crimes Code and the PFA—the purpose of the crimes code is to punish past conduct, whereas the purpose of the PFA is to prevent abusive behavior before it occurs—makes clear that "threats" as envisioned by the PFA encompasses any threat towards the victim regardless of whether it was communicated to the victim.  The argument made by amicus follows the reasoning set forth in the dissenting opinions.

198

specific enough to put him on notice that a threat could include communications to third parties. Thus, the Commonwealth proffered insufficient evidence to establish indirect criminal contempt.

■■■ A trial court's finding of contempt will not be disturbed absent an abuse of discretion. *Commonwealth v. Williams,* 753 A.2d 856, 861 (Pa.Super.2000). An appellate court cannot find an abuse of discretion merely for an error of judgment unless, in reaching a conclusion, the trial court overrides or misapplies the law, or its judgment is manifestly unreasonable, or the evidence of record shows that the court's judgment exercised is manifestly unreasonable or lacking in reason. *In re Rose Hill Cemetery Ass'n,* 527 Pa. 211, 590 A.2d 1, 3 (1991).

■■■ In vacating the judgment of sentence in the instant case, the Superior Court explained that "a charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court." *Baker,* 722 A.2d at 720. In order to establish a claim of indirect criminal contempt, the evidence must be sufficient to establish the following four elements:

(1) the order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

*Id.* at 721 (citing *Diamond v. Diamond,* 715 A.2d 1190, 1196 (Pa.Super.1998)). In determining that the evidence was insufficient to support the charge in the instant case, the court focused on the first element, that the order must be definite, clear and specific, finding that this element was critical "because [Baker] has been charged with a crime for violating that order." *Id.*

The court reasoned that while the order instructed Baker that he could not threaten N.B., it left uncertainty as to what type of communication is prohibited. Specifically, the order

was unclear as to whom the "threat" must be communicated and whether intent must be established. *Id.* The court concluded that the order did not plainly preclude the conduct exhibited by Baker and thus, he lacked "sufficient notice that a statement lacking any measure of immediacy, made outside the presence of the person to whom it would be directed, and which did not cause the protected person to feel threatened, constituted a violation of the court order." *Id.* at 722 (footnote omitted). Ultimately, the court reversed the trial court since under the circumstances of the case the evidence was insufficient to establish that Baker was guilty of indirect criminal contempt. *Id.*

In a dissenting opinion, Judge Eakin, joined by Judge Lally–Green, maintained that in order to serve the underlying purpose of the PFA, it was irrelevant whether the statement was made in the victim's presence or communicated to her. *See Baker,* 722 A.2d at 723 (Eakin, J., dissenting). Thus, the focus of the contempt proceeding should properly be upon "what Baker said, not who heard him say it." *Id.* Similarly, in a separate dissenting opinion, Judge Orie Melvin, joined by Judge Stevens, believed that the conduct in this case amounted to a threat and to hold otherwise eviscerated the purpose and goals of the PFA.

In the instant case, the analysis employed by the majority of the Superior Court is persuasive. In order to be found guilty of indirect criminal contempt, the order limiting the conduct must do so in a clear and definite manner. The Superior Court did not disregard the fact that the statement was threatening in nature, but reasoned that "[w]hether the order prohibited a threatening statement which merely referred to the plaintiff or whether such a statement had to be made in the plaintiff's presence or in some manner to subject her to fear is uncertain. Thus, we cannot say that the order clearly and specifically precluded the conduct exhibited by [Baker]." *Baker,* 722 A.2d at 722. We agree with this reasoning.

While we are mindful of the important policy considerations underlying both dissenting opinions and the PFA, we cannot elevate these considerations above the requirement that an order limiting conduct must do so in a clear and definite manner. We do not believe that such a conclusion eviscerates the purpose of the PFA. Rather, it merely respects that the law governing indirect criminal contempt requires that the order limiting a defendant's conduct communicate in a clear and definite manner what conduct is prohibited. Accordingly, we affirm the order of the Superior Court.

Justice SAYLOR files a concurring opinion in which Chief Justice FLAHERTY joins.

Justice ZAPPALA concurs in the result.

SAYLOR, Justice, concurring opinion

The order under review providing for temporary protection from abuse barred Baker from "abusing, harassing, threatening and stalking [N.B.] or placing her in fear of abuse in any place where she may be found." The majority finds such directive insufficiently specific to proscribe his public expression of an intent to kill N.B. In reaching this conclusion, the majority adopts the reasoning of the Superior Court majority to the effect that, although Baker's expression was "threatening in nature," the protection order failed to apprise whether such statements were prohibited only in N.B.'s presence or if communicated to her. The majority does not advise, however, from what portion of the order it deems the uncertainty to arise.

Certainly, as the majority effectively concedes, there should be no uncertainty that the proscription against "threatening" would generally bar public expressions of an intent to kill another—the common understanding of the term does not entail an element of presence or communication vis-à-vis the intended victim. *See, e.g.,* WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed.1999)(defining the term "threat" as "an expression of intention to hurt, destroy, punish, etc."). It may be, then, that the majority relies upon the order's employment

of the phrase "in any place in which she may be found" as implying a limitation concerning presence or communication. I do not believe, however, that this is either the intent of the order or the likely interpretation of a subject.

Significantly, the order under consideration is, for all intents and purposes, identical to the standard form of order for temporary protection from abuse set forth in Rule of Civil Procedure 1905. *See* Pa.R.C.P. No.1905 (prescribing in the standard form of order that "[d]efendant shall not abuse, stalk, harass, threaten the Plaintiff or any other protected person in any place where they might be found"). Presently, therefore, the Court is not merely deciding a case; rather, it is effectively determining the scope of all temporary orders for protection from abuse as implemented through the directive of Rule 1905. The majority's decision means that, unless and until Rule 1905 is amended, all subjects of temporary protection from abuse orders are free to publicly express their intentions to inflict harm upon the petitioner, so long as there is no evidence of presence or communication. In this regard, I share the concern expressed in the Superior Court dissent that permitting such conduct, which is clearly disrespectful of the court's intervention, would thwart important purposes of the Act. *See Commonwealth v. Baker*, 722 A.2d 718, 724 (Pa.Super.1998)(Orie Melvin, J., dissenting)(emphasizing the Act's aim of reacting to early signs of abuse and preventing more serious abuse from occurring, as well as its numerous provisions which enable courts to respond quickly and flexibly to advance warnings of abuse).

While I have little difficulty concluding that Baker's statement fell within the contemplation of the court's order, I concur in the decision to vacate the contempt citation, as I find the record insufficient to support the penalty imposed. The record of the underlying PFA case suggests that the trial court entered the temporary protection order without conducting an *ex parte* proceeding and without the threshold finding that N.B. faced immediate danger. *See generally* 23 Pa.C.S. § 6107(b). Indeed, since N.B. apparently did not pursue the matter beyond the mere filing of her petition, there is no

record evidence or finding that she ever suffered abuse or was at risk of harm.[1] While the court's temporary protection order so entered was properly served upon Baker, the record of the contempt proceedings (reflected in the form of a stipulation to the fact of the statement and the general circumstances under which it was made) does not reveal specifics concerning the nature of the explanation provided by the deputies who served the order; further, Baker's offending utterance, having occurred shortly after service of the order, was apparently made without significant opportunity for reflection upon the implications of that order. Nor does the record reflect that the deputies subsequently cautioned Baker concerning the inappropriateness of his comment in light of the order, or were faced with repeated or flagrant conduct. Additionally, while Baker's comment was certainly an expression of anger directed at N.B., it was not necessarily a description of an actual, intended course of future conduct. While many of these factors would go more to Baker's degree of culpability than to the fact of a violation, such legal conclusions are more closely intertwined in the area of indirect criminal contempt than in usual judicial proceedings. *See generally Cooke v. United States,* 267 U.S. 517, 538, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925)(stating that "the intention with which acts of contempt have been committed must necessarily and properly have an important bearing on the degree of guilt and the penalty which should be imposed").[2] Therefore, while

1. Notably, N.B. herself ultimately became the subject of contempt proceedings initiated by the court for her failure to pay prescribed costs after failing to pursue her petition.

2. Significantly, courts have been circumspect in their resort to contempt powers, restraint in this area being particularly appropriate since indirect criminal contempt generally involves violation of parameters of acceptable behavior established by the courts, contrasting with the conventional situation in which the judiciary interprets and applies the laws as established by a legislative body. In this sense, the judiciary is itself a subject of the affront by the contemnor and is necessarily in the position of vindicating its own authority. *United Mine Workers of America v. Bagwell,* 512 U.S. 821, 840, 114 S.Ct. 2552, 2563, 129 L.Ed.2d 642 (1994). In light of such concerns, the United States Supreme Court has indicated that courts are obliged to employ " 'the least possible power adequate to the end proposed.' " *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 632, 107 L.Ed.2d 644

the seriousness of Baker's utterance cannot reasonably be disputed, some further finding by the trial court related to the intention or effect of Baker's statement would have been warranted, beyond the mere conclusion that his speech was a voluntary act, prior to the imposition of a sanction reaching to the maximum available penalty. *See* 23 Pa.C.S. § 6113–14(b)(establishing the maximum period of incarceration for indirect criminal contempt for violation of a protection order as six months). Absent such finding, an appellate court is simply unable to judge whether the punishment of incarceration imposed was reasonably commensurate with the gravity of the offense and an exercise of the least oppressive sanction necessary to redress the violation.

Chief Justice FLAHERTY joins this concurring opinion.

(1990) (citation omitted). The courts have also emphasized the necessity for parameters upon the exercise of contempt powers and of adequate procedural safeguards. *See, e.g., Crozer–Chester Med. Center v. Moran,* 522 Pa. 124, 135–36, 560 A.2d 133, 139 (1989). *See generally Bagwell,* 512 U.S. at 838, 114 S.Ct. at 2563.