**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Daniel GRIFFITHS, III, Appellant.**

Superior Court of Pennsylvania.

Submitted July 19, 2010.

Filed Dec. 6, 2010.

Reargument Denied Feb. 14, 2011.

74

Thomas J. Nolan, Scranton, for appellant.

Lisa A. Swift, Assistant District Attorney, Scranton, for Commonwealth, appellee.

BEFORE: BENDER, GANTMAN, and MUNDY, JJ.

OPINION BY GANTMAN, J.:

Appellant, Daniel Griffiths III, appeals from the order entered in the Lackawanna County Court of Common Pleas, which found him in contempt for nonpayment of restitution. Appellant asks us to determine whether the court had continued authority to enforce its original restitution order and to find Appellant in contempt for failing to comply with that order. We hold that the court retained the authority to enforce its restitution order and to find Appellant in contempt for failing to comply with his restitution obligations. Accordingly, we affirm.

The relevant facts and procedural history of this case are as follows. On March 6, 1996, Appellant pled guilty to two counts of second degree felony burglary. On August 27, 1996, the court sentenced Appellant to nine (9) to thirty (30) months on the first count and a consecutive term of incarceration of four (4) to twenty-four (24) months on the second count, for an aggregate sentence of thirteen (13) to fifty-four (54) months. As part of the plea bargain, Appellant also agreed to pay restitution in full. The court ordered Appellant to pay restitution respective to each victim for a total amount of $69,811.07. By the time Appellant had finished his term of incarceration in August 2006, Appellant had paid $30,000.00 toward the restitution, with a significant amount still outstanding. From 2006 to 2009, Appellant paid nothing. Beginning in early 2007 through 2009, the court sent Appellant several delinquency notices and warned him that failure to contact the court or make payment could result in a finding of contempt and bench warrant for his arrest. Appellant apparently ignored the notices.

On December 10, 2009, Appellant appeared for a contempt hearing. Appellant conceded he had the means available and the ability to make payments towards any balance which might be legally due. Nevertheless, Appellant argued his restitution obligation ceased in August 2006, upon completion of his sentence of incarceration; therefore, the court lacked the authority to collect further restitution as of that date. The court disagreed, found Appellant in contempt of court for nonpayment of restitution, and directed him to serve (six) 6 months of incarceration, to make a $2,500.00 lump sum payment, and to pay $500.00 per month on the 1st of each month thereafter, until the full amount was paid.

On January 5, 2010, Appellant filed a timely notice of appeal. On January 8, 2010, the court ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b), which Appellant timely filed on February 1, 2010.

Appellant raises the following issues for our review:

DOES 18 PA.C.S. § 1106, AS IT WAS CODIFIED AT THE TIME OF SENTENCING IN 1996, WHICH PRECLUDED THE COLLECTION OF RESTITUTION BEYOND THE TIME OF ONE'S STATUTORY MAXIMUM SENTENCE, APPLY TO THE PRESENT MATTER?

IN LIGHT OF THE APPLICABLE STATUTE GOVERNING RESTITUTION, *TO WIT,* DOES 18 PA.C.S. § 1106, PRIOR TO THE 1998 AMEND-

MENTS THERETO, FORECLOSE THE ABILITY OF THE COMMONWEALTH TO SEEK RESTITUTION, VIA CIVIL CONTEMPT PROCEEDINGS, AFTER THE EXPIRATION OF A DEFENDANT'S STATUTORY MAXIMUM SENTENCE AS HELD IN *COMMONWEALTH V. LUPER*, 745 A.2d 1248 (Pa.Super.2000)?

ARE THERE ADDITIONAL REASONS TO CONSIDER IN SUPPORTING THE CONCLUSION THAT RESTITUTION IN THE PRESENT MATTER RUNS COUNTER TO PUBLIC POLICY CONCERNS AND/OR OTHERWISE UNDERMINES, IF NOT INVALIDATES, THE NOTICE OF CIVIL CONTEMPT ISSUED TO APPELLANT?

(Appellant's Brief at 8).

In his issues combined, Appellant argues he was sentenced under the pre–1998 version of 18 Pa.C.S.A. § 1106. Appellant avers that, under that version of the statute, the court's authority to collect restitution payments was limited to the maximum term of his sentence which had ceased upon expiration of his maximum sentence in August 2006. Appellant relies on *Luper, supra* as not only persuasive but also good law. Appellant further asserts that the *Luper* case arose from an attempt to enforce an order of restitution. Appellant contends the trial court misconstrued the facts of *Luper* and improperly rejected *Luper* as inapposite. Appellant further insists the court's reliance on *Commonwealth v. James*, 771 A.2d 33 (Pa.Super.2001) is flawed because *James* primarily addressed the availability of PCRA relief to a defendant who challenged his continuing restitution obligation before the maximum term expired in that case. Appellant avers that the unexpired maximum sentence in *James* presents a material difference between that case and the present matter.

Appellant concedes the current version of Section 1106 eliminated the time constraints on collection of restitution but insists application of the current statute raises *ex post facto* concerns. Appellant complains the Commonwealth tried to remove any *ex post facto* implications by relying only on the rehabilitative objective of restitution.

Appellant argues the Commonwealth made no effort to collect the remaining restitution from him after his initial $30,000.00 payment at the time of sentencing. Appellant contends the Commonwealth sought to enforce the restitution order only after Appellant's maximum sentence had expired. Appellant submits the Commonwealth sat on its rights and is trying to collect the balance only after the time expired for seizing its opportunity to do so. Finally, Appellant complains the court cannot find him in contempt because the amount of restitution and a restitution payment schedule was not determined at sentencing. Appellant concludes the court erred in deciding it had the authority to enforce the restitution order after Appellant had finished serving his sentence, and this Court must reverse. We disagree.

■ "A trial court's finding of contempt will not be disturbed absent an abuse of discretion." *Commonwealth v. Baker*, 564 Pa. 192, 198, 766 A.2d 328, 331 (2001). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super.2003),

*appeal denied,* 581 Pa. 671, 863 A.2d 1143 (2004).

■■■■ With respect to contempt:

The determination of whether a particular order contemplates civil or criminal contempt is crucial, as each classification confers different and distinct procedural rights on the defendant. There is nothing inherent to a contemptuous act or refusal to act which classifies the behavior as "criminal" or "civil."

The distinction between criminal and civil contempt is ... a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of some private party, proceedings to enforce compliance with the decree of the court are civil in nature.

The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained.

The factors generally said to point to a civil contempt are these: (1)[w]here the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original ... action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the [respondent] in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the [respondent] so contumelious that the court is impelled to act on its own motion.

*Commonwealth v. Ashton,* 824 A.2d 1198, 1202 (Pa.Super.2003) (quoting *Knaus v. Knaus,* 387 Pa. 370, 378, 127 A.2d 669, 673 (1956)). Pennsylvania law defines indirect criminal contempt as follows:

A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. As with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford. To establish indirect criminal contempt, the Commonwealth must prove: (1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh,* 932 A.2d 108, 110 (Pa.Super.2007).

■■■ "An order of restitution is a sentence, whether it is imposed as a direct sentence or as a condition of probation." *Commonwealth v. Dinoia,* 801 A.2d 1254 (Pa.Super.2002) (stating restitution must be determined and imposed at time of direct sentencing; any issue regarding when court sets amount of restitution constitutes challenge to legality of sentence, as it implicates court's statutory authority); 18 Pa.C.S.A. § 1106(c). *See also*

*Commonwealth v. Deshong,* 850 A.2d 712, 713 (Pa.Super.2004).

■ The version of the statute in effect at the time of Appellant's sentence included time restrictions set forth in Section 1106(c)(2)(ii) as follows:

**§ 1106. Restitution for injuries to person or property**

\* \* \*

**(c) Mandatory restitution.—**

\* \* \*

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

\* \* \*

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just, provided that the period of time during which the offender is ordered to make restitution shall not exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted.

\* \* \*

18 Pa.C.S.A. § 1106(c)(2)(ii) The current version of Section 1106 of the Crimes Code provides in relevant part as follows:

**§ 1106. Restitution for injuries to person or property**

\* \* \*

**(c) Mandatory restitution.—**

\* \* \*

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

\* \* \*

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just. [deleted time limits]

\* \* \*

18 Pa.C.S.A. § 1106(c)(2). The amended statute deleted the time limits originally contained in subsection (c)(2)(ii). *Id.* Now, an order of restitution is enforceable until paid. 18 Pa.C.S.A. § 1106(c)(2)(ii).

Under the prior version of the statute, however, the trial court had continuing power to monitor and enforce the sentence of restitution until it was paid in full, as long as "the period of time during which the offender must pay does not exceed the **maximum imprisonment to which he could have been sentenced.**" *James, supra* at 36. Thus, the court "had the authority to enforce the restitution order until the expiration of the maximum possible sentence" under the prior statute; the court's authority to enforce restitution did not cease upon expiration of the sentence actually imposed. *Commonwealth v. Karth,* 994 A.2d 606 (Pa.Super.2010) (citing prior version of statute). The trial court "may utilize its full contempt power as a means to enforce that sentence." *James, supra.*

In the instant case, Appellant pled guilty to **two** counts of burglary as second degree felonies on March 6, 1996. As part of his plea bargain, Appellant agreed to pay restitution in full. On August 27, 1996, the court sentenced Appellant to nine (9) to thirty (30) months on the first count and a consecutive term of incarceration of four (4) to twenty-four (24) months on the second count, for an aggregate sentence of thirteen (13) to fifty-four (54) months. The court ordered Appellant to pay respective restitution to each victim for a total amount of $69,811.07. By the time Appellant had finished his term of incar-

ceration in August 2006, Appellant had paid $30,000.00 toward the restitution, but more than half the amount due was still outstanding. From 2006 to 2009, Appellant paid nothing. Beginning in early 2007 through 2009, the court sent Appellant delinquency notices and warned him that failure to contact the court or make payment could result in a finding of contempt and bench warrant for his arrest. Appellant apparently ignored the notices.

Appellant appeared for a contempt hearing on December 10, 2009, where he conceded he had the means available and the ability to make payments towards any balance which might be legally due. Nevertheless, Appellant argued his restitution obligation had ceased in August 2006, upon completion of his sentence of incarceration; therefore, the court lacked the authority to collect further restitution as of that date.

The version of Section 1006(c)(2)(ii) in effect in 1995 authorized the court to collect restitution and to enforce the restitution order until expiration of the statutory maximum sentence that **could have been** imposed. *See* 18 Pa.C.S.A. § 1106. Appellant faced a statutory maximum sentence of ten (10) years on each second degree felony burglary count. *See* 18 Pa. C.S.A. § 1103. Therefore, under the version of the statute in effect when Appellant was sentenced, the court retained authority to compel payment of restitution for twenty (20) years, or until 2016.

Further, we reject Appellant's claim that the court's reliance on *James* is flawed because the defendant in that case challenged his restitution obligation when his maximum term had not yet expired. *James*, however, stands for the broader

proposition that under the prior version of Section 1106(c)(2)(ii), the court had continuing jurisdiction to enforce a restitution sentence as long as this time period **did not exceed the statutory maximum imprisonment to which the offender could have been sentenced.[1]** Therefore, Appellant's attempt to challenge his continuing restitution obligation before expiration of the statutory maximum sentence possible and to avoid the court's contempt is simply unavailing.

With respect to Appellant's *ex post facto* argument, due to our disposition of this appeal under the prior version of the statute at issue, we do not have to address Appellant's constitutional argument regarding the current version of the restitution statute. *See Commonwealth v. Levanduski*, 907 A.2d 3, 14 (Pa.Super.2006)(*en banc*), *appeal denied*, 591 Pa. 711, 919 A.2d 955 (2007), *cert. denied*, 552 U.S. 823, 128 S.Ct. 166, 169 L.Ed.2d 33 (2007) (observing: "[S]ettled Pennsylvania law provides 'a restraining principle that counsels against reaching a constitutional question if a non-constitutional ground for decision is available' "). In deference to this rule, we decline to address Appellant's constitutional issue. Similarly, we reject Appellant's "laches" claim. Because the court had the authority to enforce the restitution order, and the Commonwealth could collect restitution from Appellant until 2016, any delay in collection is not laches, particularly where for two years Appellant ignored the Commonwealth's notices and efforts to collect.

■ We also reject Appellant's position that the amount of restitution and a resti-

---

**1.** Likewise, Appellant's reliance on *Luper* is inappropriate, because the *Luper* case held that, upon expiration of the statutory maximum sentence possible, the court no longer had authority to hold the appellant in con-

tempt for failing to make restitution payments. *See Luper, supra* at 1250. Thus, *Luper* does not support Appellant's position in the present case.

tution payment schedule was not determined at sentencing. *See Commonwealth v. Allshouse*, 924 A.2d 1215, 1229 n. 27 (Pa.Super.2007), *affirmed*, 604 Pa. 61, 985 A.2d 847 (2009) (observing there is "no inherent problem with the court's decision to forego ordering a repayment schedule until after appellant is released from incarceration"). Thus, at the time of sentencing in this case, the court was permitted to defer creation of a restitution payment schedule until after Appellant's release from incarceration. Importantly, at Appellant's sentencing, the court **did** set a specific amount of restitution owed and accepted a lump sum payment of $30,000.00 toward the total restitution due. Because Appellant's ability to obtain work release was unsettled, the court properly deferred the creation of a payment schedule until Appellant's release. *See id.*

Based upon the foregoing, we hold the court retained authority to enforce its restitution order and to find Appellant in contempt for failing to comply with his restitution obligations. Accordingly, we affirm.

Order affirmed.