J-S68007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
 :         PENNSYLVANIA
 :
v.               :
 :
 :
WAYNE HESSER             :
 :
Appellant      :   No. 435 MDA 2017

Appeal from the Judgment of Sentence February 7, 2017
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
12917-2016

BEFORE:   LAZARUS, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:        **FILED NOVEMBER 08, 2017**

Wayne Hesser appeals from the trial court's judgment of sentence, entered in the Court of Common Pleas of Luzerne County, after he was found guilty of indirect criminal contempt[1] ("ICC") for violating a Protection from Abuse ("PFA") order and sentenced to three months' probation. Counsel has also filed an ***Anders***[2] brief on appeal, seeking to withdraw from representation. After careful review, we affirm and grant counsel's request to withdraw.

---

[1] ***See*** 23 Pa.C.S. § 6114(a) ("Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter . . . or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.").

[2] ***Anders v. California***, 386 U.S. 738 (1967).

---

\*   Retired Senior Judge assigned to the Superior Court.

On January 10, 2017, a Luzerne County trial judge issued a final PFA order against Hesser, the complainant's ex-boyfriend, effective January 12, 2017.  The PFA states, in relevant part:

[Hesser] shall not abuse, harass, stalk or threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to [complainant or the parties' child] in any place where they might be found.

*     *     *

[] Except as provided in paragraph 5 of this order, [Hesser] is prohibited from having **ANY CONTACT** with [complainant], either directly or indirectly, or [the parties' child] protected under this order, at any location, including but not limited to any contact at [the complainant's] school, business, or place of employment. [Hesser] is specifically ordered to stay away from the following locations for the duration of this order.  **Limited contact regarding visitation/custody is permitted (text only).**

Final PFA Order, 1/12/17, at 1-2 (emphasis added).

On January 19, 2017, Hesser was charged and arrested on two counts of indirect criminal contempt after allegedly violating the PFA order.  After a hearing held on January 26, 2017, the trial court found Hesser guilty of one count of indirect criminal contempt related to an alleged text message sent in violation of the PFA order.  Hesser was sentenced to three months' probation and ordered to comply with various conditions, including obtaining a mental health evaluation, an anger management assessment, and a batterer's intervention.  On February 6, 2017, Hesser filed a motion for reconsideration. On February 7, 2017, the trial court denied the motion.  Hesser filed a timely notice of appeal; counsel filed a Pa.R.A.P. 1925(c)(4) Statement of Intent to file an **Anders** brief.  On appeal, Hesser raises one issue for our consideration:

Whether the trial court abused its discretion in finding [] Hesser guilty of indirect criminal contempt where the Commonwealth failed to prove beyond a reasonable doubt that [] Hesser intentionally violated the PFA.

In order for counsel to withdraw from an appeal pursuant to **Anders**, certain requirements must be met. Counsel must:

(1)    provide a summary of the procedural history and facts, with citations to the record;

(2)    refer to anything in the record that counsel believes arguably supports the appeal;

(3)    set forth counsel's conclusion that the appeal is frivolous; and

(4)    state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Our Court must then conduct its own review of the proceedings and make an independent judgment to decide whether the appeal is, in fact, wholly frivolous. **Id.** at 359 (citation omitted).

Counsel has complied with the dictates of **Anders** and **Santiago**, having made a conscientious examination of the record, controlling case law and applicable statutes. Counsel has also identified for our Court the issues and supporting testimony that may arguably be raised on appeal. Furthermore, counsel has notified Hesser of his request to withdraw, furnished him with a copy of the **Anders** brief, and advised him that he may retain new counsel,

proceed *pro se* or raise any additional points that he deems worthy of our consideration.[3]

With regard to our independent review of the issue on appeal, we note that the standard of review of a contempt order is whether the trial court abused its discretion. *Commonwealth v. Baker*, 766 A.2d 328, 331 (Pa. 2001) (citation omitted). An appellate court cannot find an abuse of discretion merely for an error of judgment unless, in reaching a conclusion, the trial court overrides or misapplies the law, or its judgment is manifestly unreasonable, or the evidence of record shows that the court's judgment exercised is manifestly unreasonable or lacking in reason. *Id.*

> Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. To establish indirect criminal contempt,[4] the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Jackson*, 10 A.3d 341, 346 (Pa. Super. 2010), *citing*

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007).

---

[3] Hesser has not filed a response.

[4] "A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court." *Commonwealth v. Baker*, 722 A.2d 718, 720 (Pa. Super. 1999) (en banc) (citations omitted).

Moreover,

> when reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, [the appellate court is] confined to a determination of whether the facts support the trial court decision. **Williams v. Williams**, [] 681 A.2d 181, 183 (Pa. Super. 1996)[.] We will reverse a trial court's determination only when there has been a plain abuse of discretion.

**Commonwealth v. Kolansky**, 800 A.2d 937, 939 (Pa. Super. 2002) (citation omitted).

At the ICC hearing, the complainant testified that she received a text message from Hesser asking her to withdraw the PFA, that if she did not withdraw the petition he would make her life "F'ing" miserable, that she would be sorry, and that the parties' child would hate her. N.T. ICC Hearing, 1/26/17, at 16. The complainant testified that she felt "aggravated [and] frustrated" when she saw the text because they had just finalized the PFA order. *Id.* While the complainant did make a written statement to a police officer about the text message, *id.*, she did not have any documentary evidence of the actual text message at trial because she had switched cellular phones and the subject text no longer existed. *Id.* at 17. Complainant, however, testified that she "kn[ew Hesser's] style when he talks to [her]," *id.* at 18, and that while the text message began with a discussion regarding the parties' child, it "slowly veer[ed] off . . . putting [her] down . . . [with things] not pertaining to [their] child." *Id.*

Officer Steven Lada of the Wilkes-Barre City Police Department responded to the complainant when she called the police department to report

an alleged PFA violation. Officer Lada testified that the complainant showed him the subject text messages, which included Hesser's name as the name on the sender's phone. The officer took a written statement from the complainant which he used to file the instant charges against Hesser. *See* Affidavit of Probable Cause, Officer Steven Lada, 1/13/2017. Officer Lada testified that he did not remember the text message "verbatim" but he put the things that "stuck out to [him]" in his police report. *Id.* 22. Finally, the officer testified that the complainant's testimony was consistent with the written statement she had provided to him on the day of the incident. *Id.* at 21.

Hesser testified that, when read in the proper context, the text message concerned the "wellbeing" of the parties' son and that it was not meant in any way to be threatening or harassing to the complainant. *Id.* at 23-25. He specifically testified that the portion of his message telling the complainant that she "F'd up" was never directed at her, but rather was a conversation about the parties' son and the disconcerting state of the custody situation. *Id.* at 22-25. Moreover, Hesser testified that he never texted the complainant that he would make her life difficult. *Id.* at 23.

Here, the complainant's testimony regarding the harassing nature of Hesser's text message was verified by Officer Lada at the ICC hearing and in his affidavit of probable cause. While Hesser may contend that he did not have the requisite intent to violate the PFA order, the fact remains that a factfinder could infer his wrongful intent from the vulgar language used in the text as well as the fact that the content of the text had nothing to do with

- 6 -

visitation or custody regarding the parties' son. ***Commonwealth v. Taylor***, 137 A.3d 611 (Pa. Super. 2016) (no other legitimate reason for contemnor's text message could be discerned, other than to harass or annoy former wife). Finally, we find the PFA order's language clear that Hesser is only permitted to contact the complainant via text message with regard to matters concerning custody or visitation of the parties' son.

Accordingly, we conclude that the trial court did not abuse its discretion when it concluded that Hesser violated the PFA and, as a result, was guilty of indirect criminal contempt. ***Kolansky***, ***supra***. The trial judge found the complainant and Officer Lada credible with regard to the content of the text message. When viewed in the light most favorable to the Commonwealth, the testimony demonstrates that Hesser did not have the intent to discuss custody or visitation matters, but rather to harass or threaten the complainant by denigrating her and her parenting of the parties' minor son. ***See Commonwealth v. Brumbaugh***, 932 A.2d 108, 111 (Pa. Super. 2007) ("[W]rongful intent can be imputed by virtue of the substantial certainty that [one's actions will be] in violation of the PFA Order."); ***Commonwealth v. Haigh***, 874 A.2d 1174 (Pa. Super. 2005) (judges should use common sense and consider context and surrounding factors in making determination as to whether violation of PFA is truly intentional).

Judgment of sentence affirmed. Counsel's request to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2017