**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JARED DANIEL SWARNER | : | |
| | : | |
| Appellant | : | No. 1031 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 14, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-MD-0000097-2019

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 24, 2019**

Appellant, Jared Daniel Swarner, appeals from the May 14, 2019 Judgment of Sentence entered in the Cumberland County Court of Common Pleas following his conviction of Contempt for Violation of Order or Agreement ("Indirect Criminal Contempt" or "ICC").[1]  On appeal, Appellant challenges the weight and sufficiency of the evidence.  After careful review, we affirm.

The facts and procedural history are, briefly, as follows.  On February 15, 2017, the trial court issued a protection from abuse ("PFA") order against Appellant prohibiting him from "abusing, stalking, harassing, or threatening

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S § 6114(a) ("Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter . . . or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.").

[the victim] and . . . from having any contact with the victim, directly, or indirectly, at any location through any means, including third parties." Order, 2/15/17. The Order expires on February 15, 2020.

On February 12, 2019, the Commonwealth filed a Complaint against Appellant for ICC alleging that Appellant had sent the victim Facebook messages on ten separate occasions between December 7, 2018, and January 14, 2019.

The court held a hearing on the Complaint on April 2, 2019. The Commonwealth presented the testimony of the victim and Pennsylvania State Police Trooper Amy Kocher. Appellant presented the testimony of Bryan Gembusia, who the court qualified as an IT security and infrastructure expert. Following the hearing, the trial court found that Appellant had violated the February 15, 2017 PFA Order by sending the victim two Facebook messages using the name "Jared Weidner,"[2] and convicted him of ICC. In particular, the court convicted Appellant of sending one message stating: "I won't lose

---

[2] The victim explained that Appellant's grandmother's last name is "Weidner," and that, during the course of the relationship between the victim and Appellant, Appellant had used the last name "Weidner." N.T., 4/2/19, at 8-9. She further explained that, when she received the messages from "Jared Weidner" she believed it was associated with Appellant. *Id.* at 9. Furthermore, a photograph attached to the messages the victim received was of Appellant. *Id.* at 36.

her. I will beat her to keep her from leaving," and one stating: "She is not going anywhere. You can go to hell and die. Should have beat you hard."[3]

On May 14, 2019, the court sentenced Appellant to six months of probation and imposed a $300 fine.

On May 24, 2019, Appellant filed a Post-Sentence Motion challenging the sufficiency of the evidence in support of his conviction. In particular, he asserted that the Commonwealth failed to present sufficient evidence to establish Appellant's identity as the sender of the offending two Facebook messages. Post-Sentence Motion, 5/24/19, at ¶¶ 6, 11. Appellant also challenged the weight of the evidence. On May 28, 2019, the trial court denied Appellant's Motion.

This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the evidence was insufficient to sustain the verdict of guilt?

2. Whether the verdict was against the weight of the evidence?

Appellant's Brief at 4.

In his first issue, Appellant claims that the Commonwealth's evidence was insufficient to support his conviction of ICC. *Id.* at 20.

---

[3] The victim received these messages on January 13, 2019. N.T, 4/2/19, at 14-15. Appellant's expert witness testified that these messages were sent from the IP address associated with Appellant. *Id.* at 71.

In reviewing the sufficiency of the evidence, our standard of review is as follows:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotation marks omitted).

In *Commonwealth v. Baker*, 766 A.2d 328 (Pa. 2001), our Supreme Court set forth four elements that the Commonwealth must establish to support a claim of ICC of a PFA order. Specially, the Commonwealth must prove that:

> 1) The [PFA] order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
>
> 2) The contemnor must have had notice of the specific [PFA] order or decree;
>
> 3) The act constituting the violation must have been volitional; and
>
> 4) The contemnor must have acted with wrongful intent.

*Id.* at 331.

In support of his claim, Appellant first alleges that the Commonwealth failed to introduce the PFA Order as an exhibit at trial. Appellant concludes, therefore, that the Commonwealth failed to prove that the terms of the Order were sufficiently definite, clear, and specific as to the conduct prohibited. Appellant's Brief at 21. Appellant also asserts that the Commonwealth failed to offer testimony or evidence that Appellant had notice of the PFA Order. *Id.* at 21-22

At Appellant's trial, the Commonwealth did not introduce the PFA Order as an exhibit. However, the court took judicial notice of it and observed that "there is no real issue" regarding its existence and validity. N.T., 4/2/19, at 79.

Moreover, the Commonwealth established the existence of the PFA Order though the testimony of the victim and Trooper Amy Kocher. In particular, the victim testified, without objection, that she has an active PFA Order against Appellant that precludes Appellant from having contact with her. N.T., 4/2/19, at 8. In her testimony, the victim also referred, without objection, to prior PFA proceedings in which Appellant participated, thus establishing that Appellant had notice of the PFA Order. *Id.* at 10. Trooper Kocher testified, without objection, that the victim informed her that she had a no-contact PFA Order against Appellant and Trooper Kocher verified that the Order was in effect at the time the victim received the Facebook messages. *Id.* at 35, 37. Trooper Kocher also testified that, prior to arriving at the

victim's residence, she searched the police database to ascertain whether anyone had reported previous incidents at the victim's address and learned that there were several prior PFA violations, and several occasions resulting in charges being filed and subsequently dismissed. *Id.* at 36-37. Thus, we conclude that the Commonwealth's uncontested evidence was sufficient to establish the existence of the PFA Order and Appellant's knowledge of it.

Next, Appellant claims that the Commonwealth's evidence was insufficient to establish his identity as the sender of the Facebook messages because the Facebook messages did not contain sufficient corroborating or "contextual clues" revealing the sender's identity. Appellant's Brief at 26-27.

The evidence presented at the PFA hearing, viewed in the light most favorable to the Commonwealth as the verdict-winner, established that the Appellant's photograph accompanied the Facebook messages sent to the victim. N.T. at 36. Trooper Kocher testified that, in an effort to identify the messages' sender, she contacted Facebook through its emergency law enforcement page. *Id.* at 37. Facebook provided her with an IP address identifying the address from which the messages originated. *Id.* at 37-38. Trooper Kocher then obtained a search warrant for Facebook, requesting it provide the full text logs of all messages sent from the account bearing Appellant's photograph. *Id.* at 38. Facebook complied with the search warrant and provided Trooper Kocher with messages, which matched the messages received by the victim. *Id.* at 39.

Trooper Kocher also ascertained that Frontier Communications provided the IP address from which the "vast majority" of the Facebook messages had been sent, which revealed that the IP address belonged to Appellant.[4] *Id.* at 38, 42-43. Frontier Communications also revealed that the registered address on the account held by Appellant is Appellant's address. *Id.*

At the close of the hearing, the trial court found that the Commonwealth's evidence proved beyond a reasonable doubt that it was Appellant who had sent the victim two Facebook messages on January 13, 2019 and, thus, violated the PFA Order. *Id.* at 71-72. We agree with the trial court. Our review of the Notes of Testimony indicates that the Commonwealth presented sufficient direct and circumstantial evidence that it was Appellant who had sent the Facebook messages to the victim in violation of the PFA Order, including evidence that: (1) the two January 13, 2019 Facebook messages were sent directly from the Frontier Communications IP address associated with the account registered to Appellant; (2) the messages referenced Appellant's current girlfriend and his prior relationship and PFA proceedings with the victim; (3) the sender of the two Facebook messages used the last name "Weidner," Appellant's grandmother's last name; and (4) the farm in the photograph of "Jared Weidner's" account belongs to Appellant. Accordingly, we conclude that the trial court did not abuse its discretion when

---

[4] While the messages originated from a total of four different IP addresses, the messages the court convicted Appellant of sending originated from the Frontier Communications IP address associated with the account registered to Appellant. N.T., 4/2/19, at 45, 50.

it determined that it was Appellant who had sent the messages and, thus, violated the PFA Order.

In his second issue, Appellant challenges the weight the court gave to the Commonwealth's evidence. Appellant's Brief at 30-41. In particular, Appellant argues that the victim had attempted to incriminate him falsely and was not a credible witness. *Id.* at 34. He also argues that the court did not sufficiently credit his expert's testimony. *Id.* at 35-37. Last, he argues that the fact that the Commonwealth had previously withdrawn or dismissed ICC charges against him was exculpatory evidence ignored by the trial court. *Id.* at 39.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46.

"Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 n.3 (Pa. 2000).

The trial court explained the weight it gave to the evidence on the record following Appellant's hearing as follows:

> Mr. Gembusia is credible. Trooper Kocher is credible. The victim may not be one hundred percent credible, but she doesn't have to be one hundred percent credible. She was sufficiently credible on the two [] messages in question, and I find that those are sufficient.

N.T. at 81.

Appellant essentially asks us to reassess the court's determination of credibility of the victim, and to reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim. Appellant is, therefore, not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2019