J-A11015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MICHAEL BEECH | : | |
| | : | |
| Appellant | : | No. 1869 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 22, 2019
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-MD-0000534-2019

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 18, 2020**

Appellant, David Beech, appeals from his judgment of sentence entered by the Court of Common Pleas of Cumberland County for indirect criminal contempt as a result of his contact with the protected party of a protection from abuse ("PFA") order. We affirm.

On October 1, 2019, Officer Jarreau Dodson of the Middlesex Township Police Department attended Appellant's hearing regarding a separate charge of indirect criminal contempt for having contact with the same protected party, Sara Joy, in violation of the same PFA order involved in the instant case. Following that hearing, Joy asked Officer Dodson to walk her to her car. While Officer Dodson and Joy were waiting to cross the street at a traffic light outside

_____

[*] Former Justice specially assigned to the Superior Court.

of the courthouse, Appellant ran across the street to where the officer and Joy were standing. Appellant immediately began asking Officer Dodson questions, which Officer Dodson initially attempted to ignore.

Appellant, however, continued to ask Officer Dodson questions. Officer Dodson explained to Appellant that he could not answer Appellant's questions because he was with Joy and reminded Appellant that he had just been found guilty of violating the PFA order. In response, Appellant looked over the officer's shoulder at Joy and stated, "I don't care." N.T. Hearing In Re: Indirect Criminal Contempt/Sentence, 10/22/19, at 4, 8. Appellant persisted with his questions, and Officer Dodson repeatedly told him that he was not going to answer those questions. Appellant then told Officer Dodson to "suck [his] d***" and left. *Id*. at 5.

Based on this incident, Appellant was once again charged with indirect criminal contempt for violating the PFA order. Following a hearing on October 22, 2019, the trial court found Appellant guilty as charged and sentenced him to two to six months of incarceration. Appellant filed this timely notice of appeal, arguing that the evidence was insufficient to sustain his conviction for indirect criminal contempt.

"Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt." ***Commonwealth v.***

*Blakeney*, 946 A.2d 645, 651 (Pa. 2008) (citation omitted). To establish indirect criminal contempt for the violation of a PFA order, the Commonwealth must prove: 1) the PFA order was sufficiently definite, clear and specific to the contemnor so as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation was volitional; and 4) the contemnor acted with wrongful intent. *See Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa. Super. 2016).

> When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, [the appellate court is] confined to a determination of whether the facts support the trial court[']s decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion.

*Id*. (citations omitted).

Here, Appellant first argues that the Commonwealth failed to establish that he acted with wrongful intent because it did not show that he had any actual contact with Joy. He maintains that while Joy may have been in the company of Officer Dodson, he only engaged in conversation with Officer Dodson and therefore there was no contact with Joy that would justify a finding of contempt. This claim fails.

The PFA Act, 23 Pa. C.S.A. § 6101 *et seq*., does not provide a definition of "contact." However, in rejecting Appellant's argument below, the trial court stated:

> One of *Webster* [*Ninth New Collegiate Dictionary* (Principal Copyright 1983)]'s several definitions of the noun ["contact"] includes an 'establishing of communication with someone or receiving a significant signal from a person or object.' We agree

that the two parties to a PFA may find themselves in the vicinity of each other and not have 'contact' within this definition. In this case, however, [Appellant] approached a police officer who was standing next to [Joy]. It was his purpose to discuss the PFA proceeding with the police officer with the obvious intent, if not the sole purpose, that [Joy] would overhear it. This, to our mind, is 'contact' with [Joy].

Trial Court Opinion, 1/16/20, at 4 (unpaginated).

We see no abuse of discretion in the trial court's conclusion, especially considering the testimony that Appellant also directly engaged with Joy by looking at her when he made the statement "I don't care." N.T. Hearing In Re: Indirect Criminal Contempt/Sentence, 10/22/19, at 4, 8. In attempting to establish that the trial court did abuse its discretion, Appellant relies on **Commonwealth v. Baker**, 766 A.2d 328 (Pa. 2001) and **Commonwealth v. Haigh**, 874 A.2d 1174 (Pa. Super. 2005). Neither of these cases, however, support Appellant's claim.

In **Baker**, two deputy sheriffs overheard the appellant say that he was "going to kill this bitch" after they served Appellant with a PFA order at the prison where he was an inmate. **See Baker**, 766 A.2d at 330. The appellant was subsequently convicted of indirect criminal contempt in connection with this statement. On appeal, however, our Supreme Court determined that there was insufficient evidence to sustain the conviction because the protected party was not anywhere near the appellant when he made the statement. **See id.** at 331-332. Clearly, the same is not true in this case as Joy was within feet of Appellant during the entire exchange outside of the courthouse.

The circumstances in **Haigh** were also materially different from those in the instant case. In **Haigh**, the appellant's estranged wife obtained a PFA order against the appellant. After the wife had a procedure removing a mass from her breast, the appellant tried to contact her about the procedure by letter and by phone and was charged with indirect criminal contempt for doing so. During a hearing on that indirect criminal contempt charge, the appellant leaned over to the wife and asked if she was "ok on top?" **Haigh**, 874 A.2d at 1176. The court charged Appellant with an additional count of indirect criminal contempt, for which Appellant was convicted. Citing the "peculiar circumstances of the case," this Court held on appeal that the evidence was insufficient to support that conviction as the appellant had not acted with wrongful intent in asking his estranged wife about her health. **Id**. at 1178. In reaching this conclusion, this Court stated:

> It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly intentional before imposing sanctions of criminal contempt.

**Id**. at 1177.

Here, common sense and the consideration of surrounding factors clearly support the trial court's conclusion that Appellant's contact with Officer Dodson and Joy violated the PFA order. As the Commonwealth states in its brief:

> The facts of the instant case require no more than a common sense determination. [Appellant] acted with wrongful intent, when, immediately following a hearing on a similar matter

- 5 -

[involving a violation of the very PFA order at issue here], [Appellant] publicly approached [Joy] and acted in a vulgar and intimidating manner, knowing she would be aware of his behavior. When viewing all evidence in a light most favorable to [the] Commonwealth as verdict winner, this Honorable Court must find the evidence was sufficient to support a finding of guilt.

Commonwealth's Brief at 13. We agree.

Appellant also makes a passing assertion, however, that because the Commonwealth did not admit the underlying PFA order into evidence it "failed to prove beyond a reasonable doubt that the underlying PFA order plainly precluded the conduct exhibited by Appellant and that Appellant had sufficient notice that his conduct would constitute a violation of that order." Appellant's Brief at 11. This claim also fails.

In the first place, it is questionable whether Appellant properly preserved this claim. In his 1925(a) statement of errors complained of on appeal, Appellant only challenged the sufficiency of the evidence on the basis of his claim above that the Commonwealth failed to prove he "had any contact with the [PFA] order's protected party, as opposed to the arresting officer." Statement of Concise Errors Complained of on Appeal, 12/9/19. The statement did not contain any allegation regarding insufficient notice of what conduct was prohibited. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that issues that are not included in the appellant's 1925(a) statement of errors complained of on appeal are waived).

In any event, even if not waived, the issue lacks merit. While we agree with Appellant that the underlying PFA order does not appear to be in the

- 6 -

record, we disagree with his assertion that the trial court did not have sufficient evidence to conclude that Appellant understood what conduct the PFA order prohibited. Given that the incident at hand occurred immediately after a hearing in which Appellant was found guilty of a separate violation of the *exact same PFA order* at issue in this appeal, he was clearly aware of the PFA order and its contents. ***See also Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa. Super. 2012) (stating that a party to a PFA order is presumed to have read the contents of that order).

Moreover, Appellant does not deny that the PFA order prohibited him from having contact with Joy. The trial court, as explained above, found that Appellant's actions constituted contact with Joy and it also concluded that Appellant "knew or should have known that it was." Trial Court Opinion, 1/16/20, at 3 (unpaginated). Appellant has simply not shown that the trial court abused its discretion in reaching either of these conclusions. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2020