J-S77045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL WHALLEY | : | |
| | : | No. 153 MDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence June 2, 2016
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
13809-2015

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED DECEMBER 29, 2017**

Appellant, Michael Whalley, appeals from the judgment of sentence entered in the Court of Common Pleas of Luzerne County, which found Appellant guilty on four counts of Indirect Criminal Contempt for Violation of Order or Agreement ("ICC"), 23 Pa.C.S.A. § 6114.  In addition, Appellant's counsel, Amanda Young, Esquire ("Attorney Young"), has filed a Motion to Withdraw as Appellate Counsel as well as a brief pursuant to ***Anders v. California***, 386 U.S. 738, 744 (1967) ("hereinafter the "***Anders*** Brief") and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  In response, Appellant filed a *pro se* application for *in forma pauperis* status and appointment of new counsel.  We grant Attorney Young's Motion to Withdraw, deny Appellant's responsive *pro se* application, and affirm Appellant's judgment of sentence.

_____
*   Former Justice specially assigned to the Superior Court.

The trial court aptly sets forth the factual and procedural history of the instant case as follows:

On December 14, 2015, [A.S.[1],] ("Plaintiff"), filed a Petition for Protection from Abuse, ("PFA"), complaint, and a temporary order was issued. A final order was entered on December 29, 2015, against Defendant [hereinafter Appellant], for a period of three (3) years.

Prior to the entry of the final PFA and after the entry of the PFA Appellant was charged in a series of violations of the terms of the PFA orders. Initially, on December 28, 2015, Appellant was arrested for violating the temporary PFA order by allegedly contacting Plaintiff by phone and text messages about topics unrelated to their children and was charged with one count of Contempt for Violation of Order or Agreement, 23 Pa.C.S.A. §§ 6114(A).

Again, on January 6, 2015, Appellant was arrested for violating the PFA order for a second time by sending letters, approximately fourteen (14) pages in length, to Plaintiff. Appellant was charged with one count of Contempt for Violation of Order or Agreement, 23 Pa.C.S.A. §§ 6114(A).

An Indirect Criminal Contempt hearing was scheduled before the Honorable Michael T. Vough, for January 21, 2016, pertaining to violation number one (1), which occurred on December 28, 2015, and violation number two (2), which occurred on January 6, 2016. Appellant pled guilty and was sentenced on each violation to a term of incarceration for a period of six (6) months consecutive to each other and to any sentence he was serving. The PFA order remained in effect.

Thereafter, on March 24, 2016, Appellant was charged with Contempt for Violation of Order for violating the PFA for the third (3) time. Again, on April 11, 2016, Appellant was charged with one count of Contempt for Violation of Order for violating the PFA for the fourth (4) time.

_____

[1] We have used the victim's initials to protect her identity.

Again, on April 18, 2016, Appellant was charged with two separate counts of Contempt for Violation of Order for violating the PFA for the fifth (5) and sixth (6) time.

On June 2, 2016, an Indirect Criminal Contempt hearing was held pertaining to violation numbers three (3), four (4), five (5), and six (6). After a full hearing, Appellant was found guilty of all violations and sentenced as follows: violation number three – six months' incarceration; violation number four – six months' incarceration consecutive to violation number three; violation number five – six months' incarceration consecutive to violation number four; and violation number six – six months' [probation] consecutive to violation number five[, for an aggregate sentence of eighteen months' incarceration to be followed by six months' probation.] The Protection from Abuse Order was extended for a period of three years from the date of the ICC hearing with an expiration date of June 2, 2019.

On June 15, 2016, Appellant filed a Motion for Reconsideration and a video hearing was conducted on August 30, 2016. The matter was taken under advisement. On December 22, 2016, Appellant's Motion was denied. Thereafter, on January 13, 2017, Appellant filed a Notice of Appeal.

On January 23, 2017, an order was issued directing Appellant to file of record a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and serve a copy of same upon the District Attorney and this Court pursuant to Pa.R.A.P. 1925(b)(1). The Order required the Statement to concisely identify each ruling or error Appellant intends to challenge with sufficient detail to identify all pertinent issues for the Judge to consider. Further, the Order provided that any issue not properly included in the Concise Statement and timely filed and served within twenty-one (21) days of the date of the Order shall be deemed waived pursuant to Rule 1925(b).

On March 3, 2017, Appellant through his counsel filed a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b)[, raising the following issue for appellate review:]

> The Trial Court erred and abused its discretion in finding Mr. Whalley guilty of indirect criminal contempt on violation #6, when the alleged written

- 3 -

statements in question were directed to an individual who was not a protected person under the PFA Act and the underlying PFA did not specifically prohibit contact with said individual.

Trial Court Opinion, dated 6/28/2017, at 1-3.

Counsel has since filed a petition to withdraw on the basis of frivolity. We must, therefore, first rule on the request to withdraw without reviewing the merits of the underlying issues. *Commonwealth v. Blauser*, 166 A.3d 428 (Pa.Super. 2017). In order to withdraw from appellate representation pursuant to *Anders*, certain procedural and substantive requirements must be met. Procedurally, counsel must 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention. *See Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*).

Attorney Young's petition to withdraw sets forth that she has reviewed the entire record, and concluded that there are no actual or potential non-frivolous issues. The petition includes a copy of the letter sent to Appellant, which informed Appellant of his rights pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa.Super. 2005), namely, that he had the right to retain new counsel, or proceed *pro se* and raise additional arguments on his own behalf. Additionally, the letter states that Appellant was supplied with a

copy of the **Anders** brief,[2] and the withdrawal petition contains proof of service on Appellant.[3]  To date, Appellant has not responded to the petition to withdraw as counsel.  Therefore, the procedural requirements have been satisfied.

We now examine whether the brief meets the substantive requirements as set forth by our Supreme Court in **Santiago**.  The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa.Super. 2010) (citing **Santiago**, **supra** at 361).

The issue raised in the **Anders** brief asserts that the trial court abused its discretion in finding Appellant guilty of ICC for violations 3, 4, 5, and 6

_____

[2] Although the brief does not contain proof of service on Appellant, counsel's **Millisock** letter references it as having been enclosed.

[3] By order dated November 11, 2017, this Court granted counsel's request to amend her withdrawal petition to include a quotation from a letter that Appellant sent her on October 28, 2017.  Counsel avers that the excerpt indicates there is a conflict of interest and arguably contains a threat, which underscores the need for her to withdraw.

where the Commonwealth failed to prove beyond a reasonable doubt that Appellant intentionally violated PFA orders. Our standard of review of a contempt order is as follows:

> A trial court's finding of contempt will not be disturbed absent an abuse of discretion. **Commonwealth v. Baker**, 564 Pa. 192, 198, 766 A.2d 328, 331 (2001). An appellate court cannot find an abuse of discretion merely for an error of judgment unless, in reaching a conclusion, the trial court overrides or misapplies the law or its judgment is manifestly unreasonable. **Id.**

**Commonwealth v. Ashton**, 824 A.2d 1198, 1202 (Pa.Super. 2003). "A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court." **Commonwealth v. Brumbaugh**, 932 A.2d 108, 109 (Pa.Super. 2007). The elements of indirect criminal contempt include: "1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." **Id.** (citing **Commonwealth v. Walsh,** 36 A.3d 613, 619 (Pa. Super. 2012).

In the **Anders** brief, counsel sets forth the terms of the PFA, which prohibited Appellant from, *inter alia*, having any contact with Plaintiff, either directly or indirectly, by any means, and she indicates that Appellant denied writing the letters that were sent to Plaintiff, as he testified he could not have sent the letters from prison as he was accused of doing.

Counsel asserts the appeal is frivolous because Appellant, while aware of the clearly-worded PFA order, wrote the letters addressed to Plaintiff. Plaintiff testified that the letters were written in Appellant's handwriting and bore Appellant's return address at SCI Waymart. The court reviewed the letters and concluded that Appellant authored the letters and sent them with nefarious intent. "I've had an opportunity to review all the correspondence that are here. It's very personal. It's very detailed. It's disturbing. It's threatening[,]" the court concluded. N.T. 1/26/17 at 36. Moreover, counsel observes, the court acted appropriately in its exclusive role of finder of fact when it found Appellant's testimony disavowing authorship wholly incredible.

We agree with counsel's position that Appellant's challenge is frivolous, as the evidence sufficed to prove each element of ICC beyond a reasonable doubt and supported the court's credibility determination discrediting Appellant's testimony.[4] Thus, we determine that counsel should be permitted to withdraw.

On our independent review of the merits of the case, where we make an independent judgment deciding whether the appeal is in fact wholly frivolous, *see Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007), we have found no indication of non-frivolous issues.

We now turn to Appellant's request for *in forma pauperis* status and appointment of substitute appellate counsel. There is no question that an

---

[4] To this end, we adopt the reasoning of the trial court's June 28, 2017, opinion.

indigent prisoner is entitled to free legal counsel to assist him on direct appeal. *See* U.S. Const. amend. VI; Pa. Const. art. 1, § 9. Our review of the case law, however, convinces us that Appellant is not entitled to substitute counsel at this point in his case.

We note that "the right to appointed counsel does not include the right to counsel of the defendant's choice." *Commonwealth v. Albrecht*, 720 A.2d 693, 709 (Pa. 1998); *see also Commonwealth v. Philistin*, 53 A.3d 1, 16 (Pa. 2012). In addition, our Supreme Court has concluded that once a reviewing court is satisfied with counsel's assessment of the appeal as wholly frivolous, counsel has fully discharged his or her responsibility to an appellant and can do no more. *Commonwealth v. McClendon*, 434 A.2d 1185, 1188 (Pa. 1981); *see Commonwealth v. Santiago*, 978 A.2d at 359–61.

Here, this Court has agreed with appellate counsel's conclusion that Appellant's appeal is wholly frivolous. As such, appellate counsel has fully discharged her duty and responsibility to Appellant, and Appellant is not entitled to appointment of substitute appellate counsel at public expense to redo the appeal. *See id.*; *Santiago v. Commonwealth, Pa. Bd. of Prob. & Parole*, 506 A.2d 517, 520 (Pa. Cmwlth. 1986). Accordingly, we deny Appellant's motion.

Accordingly, the petition of Amanda Young, Esq. to withdraw as counsel is granted. Appellant's *pro se* application for *in forma pauperis* status and appointment of new counsel is denied. Judgment of sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/17

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY

| COMMONWEALTH OF PENNSYLVANIA | : | |
|---|---|---|
| Plaintiff | : | |
| v. | : | CIVIL DIVISION |
| | : | |
| MICHAEL JUSTIN WHALLEY | : | |
| | : | |
| Defendant | : | NO. 13809 OF 2015 |

2017 JUN 28 PM 3:03
FILED
PROTHONOTARY
LUZERNE COUNTY

## OPINION

### Factual and Procedural History

On December 14, 2015, ██████████████ ("Plaintiff"), filed a Petition for
Protection from Abuse, ("PFA"), complaint, and a temporary order was issued. A final
order was entered on December 29, 2015 against Defendant, Michael Justin Whalley
("Defendant"), for a period of three (3) years.

Prior to the entry of the final PFA and after the entry of the PFA the Defendant
was charged in a series of violations of the terms of the PFA orders. Initially, on
December 28, 2015, the Defendant was arrested for violating the temporary Protection
from Abuse Order ("PFA") by allegedly contacting Plaintiff by phone and text messages
about topics unrelated to their children and was charged with one count of Contempt for
Violation of Order or Agreement, 23 § 6114 §§ A.

Again, on January 6, 2015, the Defendant was arrested for violating the
Protection from Abuse Order ("PFA") for a second time by sending letters,
approximately fourteen(14) pages in length, to Plaintiff . The Defendant was charged
with one count of Contempt for Violation of Order or Agreement, 23 § 6114 §§ A.

An Indirect Criminal Contempt hearing was scheduled before the Honorable Michael T. Vough, for January 21, 2016 pertaining to violation number one (1), which occurred on December 28, 2015 and violation number two (2), which occurred on January 6, 2016.The Defendant pled guilty and was sentenced on each violation to a term of incarceration for a period of six (6) months consecutive to each other and to any sentence he was serving. The PFA order remained in effect.

Thereafter, on March 24, 2016, the Defendant was charged with Contempt for Violation of Order for violating the PFA for the third (3) time. Again, on April 11, 2016 the Defendant was charged with one count of Contempt for Violation of Order for violating the PFA for the fourth (4) time.

Again, on April 18, 2016, the Defendant was charged with two separate counts of Contempt for Violation of Order for violating the PFA for the fifth (5) and sixth (6) time.

On June 2, 2016, an Indirect Criminal Contempt hearing was held pertaining to violation number three (3), four (4), five (5), and six (6). After a full hearing, the defendant was found guilty of all violations and sentenced as follows: Violation number three - six (6) months incarceration; Violation number four – six (6) months incarceration consecutive to violation number three (3); Violation number five - six (6) months incarceration consecutive to violation number four (4); Violation number six - six (6) months incarceration consecutive to violation number five (5). The Protection from Abuse order was extended for a period of three (3) years from the date of the ICC hearing with an expiration date of June 2, 2019.

On June 15, 2016, Defendant filed a Motion for Reconsideration and a video hearing was conducted on August 30, 2016. The matter was taken under advisement.

On December 22, 2016, the Defendant's Motion to Modify and Reduce Sentenced was denied. Thereafter, on January 13, 2017, Defendant filed a Notice of Appeal.

On January 23, 2017 an order was issued directing Defendant to file of record a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) and serve a copy of same upon the District Attorney and this Court pursuant to Pa. R.A.P. 1925(b)(1). The Order required the Statement to concisely identify each ruling or error Appellant intends to challenge with sufficient detail to identify all pertinent issues for the Judge to consider. Further, the Order provided that any issue not properly included in the Concise Statement and timely filed and served within twenty-one (21) days of the date of the Order shall be deemed waived pursuant to Rule 1925(b).

On March 3, 2017 the Defendant through his counsel file a Concise Statement of Errors Complained of on Appeal Pursuant to Pa. R.A.P. 1925(b). The notice of appeal was erroneously sent to the Luzerne County District Attorneys Office and there was no response as to Defendant's concise statement of errors at filing of the opinion.

Defendant's appeal issues are as follows:

1. The Trial Court erred and abused its discretion in finding Mr. Whalley guilty of indirect criminal contempt on violation #6, when the alleged written statements in question were directed to an individual who was not a protected person under the PFA Act and the underlying PFA did not specifically prohibit contact with said individual.

The December 29, 2015 final order PFA was entered after a Hearing conducted by the court and testimony presented. After a finding of abuse based upon the testimony and credibility determinations, the final PFA Order was entered as follows:

- Defendant shall not abuse not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to

3

Plaintiff or any other protected person in any place where they might be found.

- Defendant is completely evicted and excluded from the residence at ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓

- Except as provided in paragraph 5 of this order, Defendant is prohibited from having **ANY CONTACT** with Plaintiff, either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at Plaintiff's school, business, or place of employment. Defendant is specifically ordered to stay away from the following locations for the duration of this order: CVS, Carey Ave.

- Expect as provided in paragraph 5 of this order, Defendant shall not contact Plaintiff, or any other person protected under this Order, by telephone or by any other means, including through third persons.

- Temporary custody of the minor children ▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓ ▓▓▓▓▓▓ is given to ▓▓▓▓▓▓▓▓

- The costs of this action are imposed on Defendant.

- Because this order followed a contested proceedings, or a hearing at which Defendant was not present, despite being served with a copy of the petition, temporary order and notice of the date, time and place of the hearing, Defendant is ordered to pay an additional $100 surcharge to the court, which shall be distributed in the manner set forth in 23 Pa. C.S.A. §6106(d).

- All provisions of this order shall expire in three (3) years, on 12/29/2018.


## ICC COMPLAINTS

## March 24, 2016 VIOLATION #3

In regard to Violation number three (3), Plaintiff received via US mail from Michael J. Whalley, who was currently an inmate at SCI Waymart. The letter showed a return address as: Michael J. Whalley, inmate number KG8064 F-2 bock, S.C.I. Waymart P.O. Box 256, Waymart PA, 18474-0256, Inmate Mail PA Departments of Corrections. The letter was addressed to ▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓. The letter was five (5) pages long and covered both front and

4

back. The contents of the letter were direct correspondence with/to Plaintiff which made numerous references to her. The letter also attempted to convince Plaintiff to return to a romantic relationship with Whalley.

## April 11, 2016 VIOLATION #4

In regard to Violation number four (4), Plaintiff received correspondence via US mail from Michael J. Whalley, who was currently an inmate at SCI Waymart. The letter showed a return address as: Michael J. Whalley, inmate number KG8064 F-2 bock, S.C.I. Waymart P.O. Box 256, Waymart PA, 18474-0256, Inmate Mail PA Departments of Corrections. The letter was addressed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓. The letter was fourteen (14) pages long and covered both front and back. The contents of the letter with/to Plaintiff made numerous references to her. The contents of the letter attempted to convince Plaintiff to return to a romantic relationship with Whalley.

## April 18, 2016 VIOLATION #5

In regard to Violation number five (5), Plaintiff received a letter via US mail from Michael J. Whalley, who was currently an inmate at SCI Waymart. The letter showed a return address as: Michael J. Whalley, inmate number KG8064 F-2 bock, S.C.I. Waymart P.O. Box 256, Waymart PA, 18474-0256, Inmate Mail PA Departments of Corrections. The letter was addressed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓. The letter was seven (7) pages long and covered both front and back. The contents of the letter with/to Plaintiff made numerous references to her. The contents of the letter attempted to convince ▓▓▓▓▓ to return to a romantic relationship with Whalley.

5

## April 18, 2016 VIOLATION #6

In regard to Violation number six (6), Plaintiff received a letter via US mail from Michael J. Whalley, who was currently an inmate at SCI Waymart. The letter showed a return address as: Michael J. Whalley, inmate number KG8064 F-2 bock, S.C.I. Waymart P.O. Box 256, Waymart PA, 18474-0256, Inmate Mail PA Departments of Corrections. The letter was addressed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓and was received on April 14, 2016. The letter was thirty (30) pages long and covered both front and back. The contents of the letter with/to Plaintiff made numerous references to her. The contents of the letter attempted to convince ▓▓▓▓▓▓ to return to a romantic relationship with Whalley.

## ICC HEARING

An Indirect Criminal Contempt hearing was held on June 2, 2016, before the Honorable Tina P. Gartley, pertaining to violation number three (3), four (4), five (5), and six (6), wherein Plaintiff was represented on behalf of the Commonwealth and Defendant was represented by Megan E. Anderson, Esquire. At the hearing, the Defendant, ▓▓▓▓▓▓▓▓, and▓▓▓▓▓▓▓ testified.

▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ testified that she was in a relationship with the Defendant for about six years and that they had two children together. She also noted for the record that she filed a Protection from Abuse Order that was put in effect in December. She then indicted that on March of 2015, she had received contact from the Defendant through letters. (N.T. pp. 7-8).

6

After she reviewed Commonwealth's Exhibit 1, an envelope with her address on it, she noted that she recognized Defendant's handwriting and confirmed that the address listed was Defendant's return address. She then reviewed the letter she found in the envelope in her mailbox and confirmed that she knew that the letter was addressed to her because "Whalley starts the letter off, to my beautiful dearest love of my life," which was one of the different ways the Defendant had addressed her previously. She testified that within the letter, the Defendant asked for forgiveness, and stated that he had known where she had been living all along but that he wanted to give her some space, so that is why he did not write. (N.T. pp. 8-10).

After reviewing Commonwealth's Exhibit 2, Plaintiff confirmed that it was another enveloped addressed to her, dated April 1, 2016. She testified that within the envelope, she found another letter addressed to her that stated that he was mad at her for everything that was happening; that he loved her; he wanted her to give him another chance and that he is going to make her happy. (N.T. pp. 11-12).

Upon review of Commonwealth's Exhibit 3, Plaintiff confirmed that it was another envelope addressed to her, dated April 7, 2016. She testified that the letter within the enveloped was from the Defendant and identified the handwriting as the Defendant's. She attested that Defendant asked her to take the children to visit his paternal grandparents on his behalf and also accused her of holding grudges and keeping their children from his grandparents. (N.T. pp. 12-13).

In reviewing Commonwealth's Exhibit 5, she testified that it was a bigger enveloped addressed to her from Defendant dated April 14, 2016. She testified that throughout the letter the Defendant spoke about her new boyfriend, ████████, and

7

threatened him. The Defendant also stated that he did not want her to be with ██████

Plaintiff testified that she was very upset and distraught after repeatedly receiving the letters from the Defendant. (N.T. pp. 13-14).

On cross-examine, she testified that she was concerned about threats because he did not seem to get that she did not want to be with him anymore and that no contact is no contact. (N.T. pp. 16-17). She noted as follows:

> There is no contact, period. He knows this, and he's aware of this, and still continues to write, and of course, I'm not going to write back. I'm not going to write back and say leave me alone. I'm going to give it to who I need to give it to, and that's it. I'll take the letters who I need to take the letters to. I'm not going to respond back. It seems like it's really upsetting him. And then for him to write the guy I'm with now and making threats and saying things in these letters, it's uncalled for. It's uncalled for. No contact is no contact. (N.T. p. 17).

██████████

██████████ testified that he received a letter addressed to him from the Defendant. Defense Counsel then objected to the relevance of his testimony.

| | |
|---|---|
| Ms. Sperrazza: | Your Honor, she asked why she's afraid of these letter. She said the threats that were made to her boyfriend who's living at the same house as she is, which are mentioned in the letters to her, how he's going to deal with the boyfriend. I think this is more than relevant. It's him showing her what he's going to do to any men in her life." (N.T. p. 18). |
| Defendant: | Objection |
| The Court: | Sir, He says in a letter I'm reading that I wrote him letters threatening him. That letter says that he wrote him a letter, and that, "when I see him he's going to need a wheel chair. Remember my nickname is Tyson. Remember what I did to the big guy at the Outsiders." He goes on and he actually acknowledges in these letters that he |

8

wrote threating letters to this person. So I will allow It." (N.T. p. 18).

Mr. ████ testified that he lives with ████████ and her two children. He also noted that he had received a letter from Mike Whalley, with threats of what he is going to do to him when he gets out. (N.T. pp. 19).

On cross-examine, Mr. ████ was asked about an ongoing Children and Youth Investigation that he was a part of during the time he received that letter ████ testified that the threatening letters started back in December and that the ongoing investigation did not happen until March or April. (N.T. pp. 21-22).

## MICHAEL WHALLEY

After review of Commonwealth's Exhibit 1, postage from 3/18/2016, the Defendant testified the following:

| | |
|---|---|
| Defendant: | "Your honor, every piece of mail that I sent out is closely monitored and recorded in my monthly account statements along with cash slips that I have filed out that have to match the address on the enveloped. This envelope right here (indicating) that's dated 3/18 of 2016, this is a 1, 2, 3, 4, 6, 6, 7 – this is an 8-page letter, Your Honor, which would require me to pay postage at the DOC, Now I have a cash slip here.." (N.T. p. 25) |
| Commonwealth: | Your Honor, objection to any cash slips or records that are being presented by the Defendant They haven't been properly verified. He keeps talking about a business record that's recorded by the DOC. (N.T. p. 25) |
| The Court: | ..... And there has to be a question in front of you as what's what. The simple question is, did you write these letters? (N.T. p. 25) |

9

Defendant:        No, Your Honor, I didn't and these account statements will prove that I did not because the postage will not match up with any of my posts – any of my mail that I sent out and who I sent it to. (N.T. p. 25)

Thereafter, the Objection as to the documentation provided by the Defendant was sustained.[1] The Defendant then testified that he did not write any of the letters because none of the signatures were his. He further attested that he had reason to believe someone else penned the letters because he was getting out within two months and that they knew that once he did he was going to pursue criminal proceedings against Plaintiff. The basis of the criminal charges was that Plaintiff stole over four thousand eight hundred ($4,800.00) dollars out of his personal banking account. (N.T. p. 29).

During cross-examination, the Defendant testified that someone else typed those envelops and that those envelopes were not like the ones he was given at SCI Waymart. The Defendant then testified to the names of his children, and confirmed that he was previously Plaintiff's fiancé, just as signed in the letters. (N.T. p. 32).

## LAW AND ARGUMENT

I.  **The Trial Court erred and abused its discretion in finding Mr. Whalley guilty of indirect criminal contempt on violation #6, when the alleged written statements in question were directed to an individual who was not a protected person under the PFA Act and the underlying PFA did not specifically prohibit contact with said individual.**

The Defendant alleges that the court erred and abused its discretion in finding him guilty of indirect criminal contempt on violation #6. Violation number six (6) was a

---

[1] Later on the court allowed the cash slips as Defendant's Exhibit. . (N.T. pp. 34-35).

10

letter from Michael J. Whalley, who was currently an inmate at SCI Waymart. The letter showed a return address as: Michael J. Whalley, inmate number KG8064 F-2 bock, S.C.I. Waymart P.O. Box 256, Waymart PA, 18474-0256, Inmate Mail PA Departments of Corrections. The letter was addressed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ The letter was thirty (30) pages long and covered both front and back. The contents of the letter were clearly a direct correspondence with/to ▓▓▓▓▓ which made numerous references to her. The contents of the letter were clearly an attempt to convince ▓▓▓▓▓ to return to a romantic relationship with Defendant.

Again and to clarify, ICC Number six pertains to a letter addressed to the Plaintiff from the Defendant at SCI Waymart received by Plaintiff on April 14, 2016. It is a thirty (30) page letter.

The Defendant contends that he was charged for written statements directed to an individual who was not a protected person under the PFA Act and the underlying PFA did not specifically prohibit contact with said individual. The written statement the Defendant alleges he is being charged over was a five (5) page letter to ▓▓▓▓▓

The Defendant is clearly wrong. He was charged in ICC number six with correspondence from the Defendant directly to the Plaintiff. The confusion may be based upon Exhibit 6 at the ICC hearing, (Exhibit 6 is a letter from the Defendant to ▓▓▓▓▓▓), a non-party to the PFA. The testimony of ▓▓▓▓▓▓ was not considered nor a basis for any ICC violation. Moreover no ICC was filed regarding ▓▓▓▓▓▓ in that he is not a party to the PFA.

Further two exhibits were marked #6, the second being an envelope addressed to Plaintiff from Defendant with the following noted on the back of the envelope: "Please

11

read this when your alone. Im (sic) really sorry Please don't be mad anymore Please forgive me for all the wrong Ive (sic) done. I regret my mistakes sweetheart." The record and criminal complaint clearly illustrates that violation number six (6) was for a thirty (30) page letter addressed to ██████████

The Commonwealth noted the only letters they were addressing in the ICC filed were direct correspondence from the Defendant to the Plaintiff.

| | |
|---|---|
| Ms. Sperrazza: | Your Honor, the victim has testified and been able to identify both the address that they came from the DOC, where the Defendant is, that they were delineated with his inmate number and that they are, indeed, his handwriting. Furthermore, she's also been able to identify the way in which he addresses the multi-page letters that include information that he knows about their family, about their children, and about the situation that led to the PFA in and of itself. Of course he wrote these letters. He makes that clear within the nature of them and how he addresses his fiancé and how he signs them. |
| The Court: | Clearly, I've had an opportunity to review all the correspondence that are here. It's very personal. It's very detailed. It's disturbing. It's threatening. Unequivocally when it says in one of the letter, "Please stop being like this." "I forgave you. Why can't you forgive me?" "I love you completely." "You're my everything." "For better or worse, until death does us part." "That's how deep our love runs," is concerning. |
| Mr. Whalley: | Your Honor, I never wrote that. |
| The Court: | In the midst of these letters, there's photographs of you and your son that are attached to one of them. |
| Mr. Whalley: | They were pulled off her Facebook, Your Honor. |
| The Court: | In letter No. 4 it says, "Write me a letter. Send it to me as if ██████ ██████wrote it to me, then you won't get in any trouble. I just want you back. I'm trying to prove my love for you, ██████ Please start trusting me." |

(N.T. pp. 35-37).

12

CONCLUSION

As noted, ICC #6 was a letter from the Defendant to the Plaintiff. The letter to ▓▓▓▓▓▓▓▓▓, listed as one of the Exhibits #6, and his testimony were not a separate ICC. They were offered by the Commonwealth in their case in chief regarding ICC violations 3,4,5 & 6. The finding of guilt regarding ICC #6 was based upon the thirty page correspondence received by Plaintiff After a thorough review of the submissions by the parties, the certified record, and relevant law, there is no substantive merit to Defendant's appeal.

**END OF OPINION**

13