J-S13006-25

J-S13007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLTER CONWAY | : | |
| | : | |
| Appellant | : | No. 1114 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 2, 2024
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-MD-0000966-2024

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLTER CONWAY | : | |
| | : | |
| Appellant | : | No. 1115 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 2, 2024
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-MD-0000967-2024

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: APRIL 23, 2025**

Appellant, Colter Conway, appeals[1] from the judgments of sentence

entered by the Centre County Court of Common Pleas for indirect criminal

---

[1] Appellant filed a separate notice of appeal under both of the lower court dockets involved. We consolidated the appeals *sua sponte* for review as they raise identical challenges to the trial court's decision following a combined PFA violation hearing.

contempt as a result of his violations of a protection from abuse ("PFA") order. On appeal, Appellant challenges the admission of evidence, as well as the sufficiency and weight of the evidence underlying his convictions, all based on his challenge to the authentication of social media posts admitted into evidence by the Commonwealth. After careful review, we affirm.

On March 8, 2024, a final amended PFA order was entered against Appellant, in favor of his former spouse, Angel Marie Conway, to be effective until March 7, 2026. Among other things, the order relevantly directed that Appellant "may not post any remark(s) and/or image(s) regarding [Ms. Conway] on any social network(s)." **See** Commonwealth's Exhibit 1, at 2.

In June 2024, two criminal complaints were filed days apart, each charging Appellant with indirect criminal contempt for violating the PFA order based on multiple Facebook posts and comments alleged to have been made by Appellant about Ms. Conway.

On August 2, 2024, a combined PFA hearing was held under both of the above dockets. The Commonwealth introduced screenshots of the Facebook posts into evidence and authenticated them through Ms. Conway's testimony. Defense counsel objected to the admission of the posts and was overruled.

Ms. Conway testified that Appellant is her ex-husband and they have children together. **See** N.T., PFA Violation Hearing, 8/2/24, at 4-5. Ms. Conway affirmed Appellant was never married prior to their marriage and has no other children. **See id.** at 5. Ms. Conway initially sought and was granted

a PFA order against Appellant in March 2023, which was amended in March 2024. *See id.* at 6. Ms. Conway understood the PFA to prohibit Appellant from making any comments or posts about her on social media. *See id.*

In June 2024, Ms. Conway learned from her mother, her sister, and her stepmother, that there were posts made about her on Facebook. *See id.* at 7. Ms. Conway stated she knew it was Appellant's account because he posted photos of their children that only he would have had access to, and his name is on the account. *See id.* at 8, 10.

On June 6, 2024, Ms. Conway discovered a post on the Facebook app on the above account which read: "I can see it now, 10, 15 years from now my girls will be saying their mother was a slut and bum who dropped out of school … That their Aunt Abigayle did nothing but make excuses for their mothers toxic behavior. These people should be ashamed of themselves, instead they defend their horrible behavior." Commonwealth's Exhibit 2. Ms. Conway believed the post related to her because Appellant only has children with her, and she would clearly be the mother referenced in the post. *See* N.T., PFA Violation Hearing, 8/2/24, at 11. Ms. Conway also stated her sister is their children's "Aunt Abby" and they have no other Aunt Abby. *Id.*

Another post on June 6, 2024, made a week after a PFA hearing between Appellant and Ms. Conway, read "[e]ven one of my witnesses Cari Clouser who knows about Stephanie Cooper said my ex needs to grow the f#ck up as well claimed my ex is a little b*tch. My response was no she's not a little

b\*tch, she's a big b\*tch in a tiny body." Commonwealth's Exhibit 3. Ms. Conway confirmed that comment references two individuals, witness Cari Clouser and Attorney Stephanie Cooper, who were involved in the PFA proceedings the week prior. ***See*** N.T., PFA Violation Hearing, 8/2/24, at 12.

After seeing the above two posts, Ms. Conway contacted the police to see if the posts were in violation of the PFA. ***See id.*** While the police were looking into those posts, on June 13, 2024, the same day the children had a visit with Appellant at the Children's Advocacy Center ("CAC"), four pictures were posted to the same account of Appellant with his and Ms. Conway's two daughters at the CAC. In the comment section for those photos, the account at issue wrote:

> Gave the girls hugs, told them be good for their mom as I know she can't afford gas money these days and that silver dodge caravan I bought her must be hard to keep up with.
>
> I've already considered having the attorney legally remove her from the title as I know it's a lot for her to maintain.

Commonwealth's Exhibit 4. Ms. Conway believed this comment to be about her because she is the girls' mother, and Appellant is a co-owner on the title of her silver Dodge Caravan. ***See*** N.T., PFA Violation Hearing, 8/2/24, at 14.

Finally, right after the above photos at the CAC, the same account posted again on June 13, 2024, stating: "Might visit Archbald pothole state park & my coworker was like today that's the second biggest hole you've been in. #ex #spouse." Commonwealth's Exhibit 5. Ms. Conway believed this post was about her because of the hashtags, since she is the only spouse Appellant

has ever had. ***See*** N.T., PFA Violation Hearing, 8/2/24, at 15. The same account wrote a comment on that post stating: "My ex has my ex sister in-law Abigayle Flickenger beat and she's definitely been around." Commonwealth's Exhibit 5. Ms. Conway believed this comment was referring to her because it referenced her sister again, and she is Appellant's "ex." ***See id.*** at 16. After becoming aware of these additional posts, Ms. Conway again contacted the police and provided them with screenshots of the posts. ***See id.***

Ms. Conway acknowledged other people can make Facebook pages that purport to be someone else, but also emphatically denied there was anyone else who would know the information contained within the posts, or who would have any reason to discuss her in that way on Facebook. ***See id.*** at 17.

In his testimony, Appellant asserted he was in a relationship with Ms. Conway's sister, Abigayle, and that she set up the Facebook account at issue. ***See id.*** at 27. He stated he watched Abigayle set up the account. ***See id.*** at 28. Appellant testified Abigayle lived in the apartment downstairs from him until just a few days prior to the violation hearing, and that they had been in a sexual relationship. ***See id.*** at 28-29. Appellant provided a letter and text messages purported to be from Abigayle to Appellant to demonstrate an intimate relationship between the two of them that would provide Abigayle with access to his Facebook page. ***See id.*** at 29-33.

Appellant denied posting any of the comments entered into evidence by the Commonwealth and denied having access to the account at issue. ***See id.***

at 33-34. Appellant stated Abigayle set up the account and only she had access to the information needed to access the account. *See id.* at 34.

Appellant explained that Abigayle was able to obtain the pictures of Appellant with his daughters at the CAC because he gave her the micro SD card from his cell phone. *See id.* at 34-35. Appellant asserted he gave Abigayle the memory card on multiple occasions, and that she held onto it for a while. *See id.* at 35. Appellant insisted it had to be Abigayle that posted the comments including the ones about herself "that she's definitely been around." *Id.* Appellant stated that when he came home from the CAC, he went to spend time with Abigayle and told her "how the kids were doing, how much fun they had." *Id.* at 36. Despite affirming he was having a good conversation with his intimate partner, Appellant maintained that Abigayle must have then immediately used the photos that same day to frame him for a violation of the PFA. *See id.* at 36-37. Appellant stated he was in an intimate relationship with Abigayle until his arrest date on June 15, 2024, and he was not aware the Facebook posts at issue were made and he did not have access to the account and did not monitor it. *See id.* at 38-39.

After hearing from Ms. Conway and Appellant, the court found Appellant guilty of indirect criminal contempt on both dockets. The court extended the PFA order for three years from the date of the hearing and sentenced Appellant to a concurrent 6 months' probation and a $300 fine under each docket. These timely appeals followed.

Appellant raises the following issues on appeal:

1. Whether the trial [court] committed revers[i]ble error in allowing the protected party to authenticate [Appellant]'s Facebook page?

2. Whether there was insufficient evidence to establish a violation of the [PFA order]?

3. Whether the guilty verdict was against the weight of the evidence?

Appellant's Brief, at 3.

In his first two issues, Appellant argues the evidence was insufficient to convict him because the Commonwealth, relying solely upon Facebook posts and Ms. Conway's testimony to prove Appellant's identity, failed to properly authenticate the posts under Pa.R.E. 901(b)(11); the circumstantial evidence of ownership of the account or authorship of the posts presented by the Commonwealth did not satisfy the admissibility requirements under Rule 901; and that because of the evidentiary issues, there was insufficient evidence to prove Appellant violated the PFA. Since Appellant's sufficiency claims are interrelated, we will address them together.

"When reviewing a contempt conviction ... we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the

exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Griffiths***, 15 A.3d 73, 76 (Pa. Super. 2010) (citation omitted).

Our standard of review in assessing the sufficiency of the evidence to sustain an appellant's conviction is as follows.

> The standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Brumbaugh***, 932 A.2d at 109-10 (citation omitted).

"It is [also] well settled that evidentiary rulings are within the sound discretion of the trial court." ***Commonwealth v. DiStefano***, 265 A.3d 290, 297 (Pa. 2021) (citation omitted). A trial court's ruling on the admissibility of evidence will only be reversed where there has been an abuse of discretion:

> An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has

reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* at 298 (citation omitted).

Pennsylvania Rule of Evidence 901 governs the authentication of evidence, requiring authentication prior to the admission of electronic evidence. *See Commonwealth v. Murray*, 174 A.3d 1147, 1156 (Pa. Super. 2017). Generally, authentication requires a low burden of proof:

The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Evidence that cannot be authenticated by a knowledgeable person, pursuant to [Pa.R.E. 901(b)(1)], may be authenticated by other parts of [Pa.R.E. 901(b)], including circumstantial evidence pursuant to [Pa.R.E. 901(b)(4)].

*Commonwealth v. Mangel*, 181 A.3d 1154, 1159 (Pa. Super. 2018) (citations and footnote omitted).

Rule 901 has been amended to address digital evidence, providing as follows:

(11) Digital Evidence. To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11). The comments to Rule 901 explain "[t]he proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." *Id.* at cmt. Circumstantial evidence of identifying content "may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author." *Id.* "Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship [but such evidence may be enough] in combination with other evidence of the author's identity." *Id.*

> Further,
>
> We have also recognized that social media evidence presents challenges for authentication because of the ease with which a social media account may be falsified, or a legitimate account may be accessed by an imposter. However, we have acknowledged that the same uncertainties can exist with other types of evidence, such as written documents where signatures could be forged, or a letterhead copied.

*Commonwealth v. Jackson*, 283 A.3d 814, 818-19 (Pa. Super. 2022) (citations omitted).

The record does not support Appellant's argument that there was insufficient circumstantial evidence to authenticate the Facebook posts. Appellant argues that while the trial court based their argument on *Mangel*, that case actually supports his position. We disagree.

In **Mangel**, the only evidence presented to authenticate the Facebook account was that the account "bore Mangel's name, hometown and high school[,]." **Mangel**, 181 A.3d at 1164. Importantly, there were no contextual clues that identified Mangel as the person who sent the messages. **See id.**

Here, while the Commonwealth did not present user information for the Facebook account, it presented much more evidence than in **Mangel** to authenticate that Appellant authored the post. The Facebook posts and testimony provided ample circumstantial evidence and contextual clues that Appellant authored the post: (1) the user name utilized Appellant's full name; (2) the profile picture was Appellant; (3) the photographs were of Appellant with his children, posted on the same day Appellant had a visit with his children at the CAC where no one else was in attendance; (4) multiple posts reference Ms. Conway's sister Abigayle, their daughters aunt, in a critical tone; (5) one post specifically referenced two individuals involved with a PFA hearing that occurred just a week prior to that post, and (6) the generally contentious history between Appellant and Ms. Conway. Accordingly, the trial court did not abuse its discretion in finding the Commonwealth sufficiently authenticated the Facebook posts as being written by Appellant.

Appellant next argues that the evidence was insufficient to establish a violation of the PFA order. However, we cannot find Appellant preserved this issue for our review. In order to preserve a sufficiency claim on appeal, an appellant must specify in the 1925(b) statement the element or elements

upon which the evidence was insufficient. *See Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017). Upon review, Appellant did not clearly identify in his 1925(b) statement what elements of indirect criminal contempt he believes the Commonwealth failed to prove beyond a reasonable doubt. *See* 1925(b) Concise Statement, at ¶ 2(b) (simply stating "[t]here was insufficient evidence to establish a violation of the PFA Order.").

In any event, Appellant's sufficiency claim is dependent upon the admissibility of the Commonwealth's evidence. However, "whether evidence was properly admitted does not factor into our analysis, as sufficiency is not determined upon a diminished record." *Commonwealth v. Williamson*, 330 A.3d 407, 417 (Pa. Super. 2025) (citation omitted). As we have already found the evidence was properly authenticated, there was no issue with the court considering the evidence presented.

Therefore, Appellant's evidentiary or sufficiency claims are without merit or otherwise waived.

Alternatively, Appellant challenges the weight of the evidence upon the same basis as his above issues: that the Commonwealth failed to present any direct or sufficient circumstantial evidence to refute his defense that he was not the owner of the Facebook account and that a third party was posting as him. *See* Appellant's Brief, at 27.

A challenge to the weight of the evidence concedes there was sufficient evidence to sustain the verdict. *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). We employ an abuse of discretion standard:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence.

*Id.* at 753 (citations omitted).

"A challenge to the weight of the evidence must be raised before the trial court either orally or in a written motion before sentencing, or in a post-sentence motion." *Commonwealth v. Delamarter*, 302 A.3d 1195, 1200 (Pa. Super. 2023) (citing Pa.R.Crim.P. 607(A)(1)-(3)). Appellant did not file either a post-sentence or pre-sentence motion or raise the weight of the evidence orally at sentencing. Appellant's claim is therefore waived as it was not raised with the trial court.

We note that even if not waived, Appellant would not be entitled to relief. The court clearly did not find Appellant's testimony credible. Trial Court Opinion, 10/15/24, at 6 ("The [c]ourt, familiar with [Appellant] from several in [c]ourt proceedings. did not find credible his suggestion that someone other than him made the Facebook postings."); *see also id.* at 9 ("The [c]ourt did not find credible [Appellant]'s suggestion that Ms. Conway's sister or someone else other than [Appellant] created the Facebook postings.").

- 13 -

Based on its finding that there was sufficient evidence to find Appellant guilty of indirect criminal contempt for violating the PFA order, the court found that it could not follow that its guilty verdict was against the weight of the evidence. ***See id.*** at 10. We agree. For the same reasons Appellant is not entitled to relief on his evidentiary and sufficiency claims, we conclude the trial court did not abuse its discretion in rejecting Appellant's weight claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/23/2025